CLYDE & CO US LLP
BRUCE D. CELEBREZZE, State Bar No. 102181
*bruce.celebrezze@clydeco.us*
DEAN J. McELROY, State Bar No. 213132
*dean.mcelroy@clydeco.us*
101 Second Street, 24th Floor
San Francisco, CA 94105
Telephone: 415.365.9800
Facsimile: 415.365.9801

Attorneys for Plaintiff TRAVELERS
PROPERTY CASUALTY COMPANY OF
AMERICA

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation,<br><br>Plaintiff,<br>v.<br><br>SEIRUS INNOVATIVE ACCESSORIES, INC., a Utah corporation, MICHAEL CAREY, an individual California resident, WENDY CAREY, an individual California resident, and ROBERT MURPHY, an individual California resident,<br><br>Defendants. | Case No. **'19CV0829 LAB MDD**<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT**<br><br>**JURY DEMAND INDORSED HEREON** |

Plaintiff Travelers Property Casualty Company of America ("Travelers"), for its complaint against defendants Seirus Innovative Accessories, Inc. ("Seirus"), Michael Carey, Wendy Carey, and Robert Murphy, alleges as follows:

## JURISDICTION AND VENUE

1. Jurisdiction of this action is founded upon 28 U.S.C. § 1332, as the parties are citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2. Venue is proper in the Southern District of California pursuant to 28 U.S.C. § 1391(b)(2), in that this action seeks a declaration of the parties' rights and obligations under a

contract of insurance underwritten and issued in this district and delivered to a policyholder's offices in Poway, California.

## PARTIES

1. Travelers is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut.

2. Seirus is a corporation organized and existing under the laws of the State of Utah, with its principal place of business in Poway, California.

3. Michael Carey is an individual residing in San Diego, California.

4. Wendy Carey is an individual residing in San Diego, California.

5. Robert (Bob) Murphy is an individual residing in San Diego, California.

## PRELIMINARY ALLEGATIONS

A. The Travelers Policies

6. Travelers issued commercial general liability insurance policy no. Y-630-0E864117-TIL-16 to named insured "Seirus Innovative Accessories, Inc." for the policy period February 1, 2016 to February 1, 2017, and Travelers issued commercial general liability insurance policy no. Y-630-0E864117-TIL-17 to named insured "Seirus Innovative Accessories, Inc." for the policy period February 1, 2017 to February 1, 2018 ("the Travelers Policies").

7. The Travelers Policies each provided commercial general liability insurance subject to a $2,000,000 "General Aggregate Limit (Other than Products-Completed Operations)," a $2,000,000 "Products-Completed Operations Aggregate Limit," a $1,000,000 "Each Occurrence Limit," and a $1,000,000 "Personal & Advertising Injury Limit."

8. The Travelers Policies each provided coverage pursuant to all of the terms, conditions, limitations, exclusions, and endorsements contained therein.

9. The Travelers Policies, in the Commercial General Liability Coverage Form, form CG 00 01 10 01 (as amended), each provided in part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. …

* * *

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.   Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1)  The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

(2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

a.  **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

***

    d.    **Criminal Acts**

        "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

10. The coverage afforded in the Travelers Policies under form CG 00 01 10 01 is modified by an endorsement entitled "Amendment of Coverage B – Personal and Advertising Injury Liability – Technology," form CG D4 71 01 15, which contains the following exclusions:

This insurance does not apply to:

    b.    **Material Published With Knowledge Of Falsity**

        "Personal injury" or "advertising injury" arising out of oral or written publication, including publication by electronic means, of material, if done by or at the direction of the insured with knowledge of its falsity.

    c.    **Material Published Or Used Prior To Policy Period**

        (1)    "Personal injury" or "advertising injury" arising out of oral or written publication, including publication by electronic means, of material whose first publication took place before the beginning of the policy period; or

        (2)    "Advertising injury" arising out of infringement of copyright, "title" or "slogan" in your "advertisement" whose first infringement in your "advertisement" was committed before the beginning of the policy period.

***

    i.    **Intellectual Property**

        "Personal injury" or "advertising injury" arising out of any actual or alleged infringement or violation of any of the following rights or laws, or any other "personal injury" or "advertising injury" alleged in any claim or "suit" that also alleges any such infringement or violation:

        (1)    Copyright;

        (2)    Patent;

        (3)    Trade dress;

**(4)** Trade name;

**(5)** Trademark

**(6)** Trade secret; or

**(7)** Other intellectual property rights or laws.

This exclusion does not apply to:

**(1)** "Advertising injury" arising out of any actual or alleged infringement or violation of another's copyright, "title" or "slogan" in your "advertisement"; or

**(2)** Any other "personal injury" or "advertising injury" alleged in any claim or "suit" that also alleges any such infringement or violation of another's copyright, "title" or "slogan" in your "advertisement".

11. Section II of the Commercial General Liability Coverage Form, form CG 00 01 10 01, in the Travelers Policies, entitled "Who Is An Insured," provides in part: "1. If you are designated in the Declarations as: ... d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your 'executive officers' and directors are insureds, but only with respect to their duties as your officers and directors. ..."

12. The following definitions are found in form CG 00 01 10 01 in the each of the Travelers Policies:

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

\*\*\*

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

13. The following definitions are amended or added through form CG D4 71 01 15 in each of the Travelers Policies:

    A. **AMENDMENT OF DEFINITION OF PERSONAL AND ADVERTISING INJURY**

    The following replaces the definition of "personal and advertising injury" in the **DEFINITIONS** Section:

    "Personal and advertising injury" means "personal injury" or "advertising injury".

\* \* \*

    G. **ADDITIONAL DEFINITIONS**

    The following is added to the **DEFINITIONS** Section:

    "Advertising injury":

    a. Means injury, other than "personal injury", caused by one or more of the following offenses:

        (1) Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

        (2) Oral or written publication, including publication by electronic means, of material in your "advertisement" that:

         **(a)** Appropriates a person's name, voice, photograph or likeness;

         **(b)** Unreasonably places a person in a false light; or

    **(3)** Infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

**b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

\* \* \*

"Personal injury":

**a.** Means injury, other than "advertising injury", caused by one or more of the following offenses:

    **(1)** False arrest, detention or imprisonment;

    **(2)** Malicious prosecution;

    **(3)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

    **(4)** Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; or

    **(5)** Oral or written publication, including publication by electronic means, of material that:

         **(a)** Appropriates a person's name, voice, photograph or likeness;

         **(b)** Unreasonably places a person in a false light.

      b.    Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

"Slogan":

      a.    Means a phrase that others use for the purpose of attracting attention in their advertising.

      b.    Does not include a phrase used as, or in, the name of:

            **(1)**    Any person or organization, other than you; or

            **(2)**    Any business, or any of the premises, goods, products, services or work, of any person or organization, other than you.

'Title" means a name of a literary or artistic work

14.    The Travelers Policies also each include an endorsement entitled "Amendment – Non Cumulation of Each Occurrence Limit of Liability and Non Cumulation of Personal Injury and Advertising Injury Limit," form CG D2 03 12 97, that modifies the insurance provided in the Commercial General Liability Coverage Part and provides as follows:

    1.    Paragraph 5 of SECTION III – LIMITS OF INSURANCE, is amended to include the following:

        Non cumulation of Each Occurrence Limit – If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Each Occurrence Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such an "occurrence".

    2.    Paragraph 4 of SECTION III – LIMITS OF INSURANCE, is amended to include the following:

        Non cumulation of Personal and Advertising Limit – If "personal injury" and/or "advertising injury" is sustained by any one person or organization during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Personal Injury and Advertising Injury Limit will be

>reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "personal injury" and/or "advertising injury".

B. <u>The First Amended Complaint in the Underlying Action</u>

15. On January 29, 2019, Columbia Sportswear North America, Inc. ("Columbia") filed a complaint against Seirus, Ventex Co., Ltd., Michael Carey, Wendy Carey, Robert (Bob) Murphy, Kyung Chan Go, Man-Sik (Paul) Park, and John Doe Nos. 1-5 in the United States District Court for the District of Oregon, Portland Division, Case No. 3:19-cv-00137-SI ("the 2019 *Columbia* Action").

16. On February 28, 2019, Columbia filed its first amended complaint in the 2019 *Columbia* Action ("the *Columbia* FAC"). A true and correct copy of the *Columbia* FAC is attached as Exhibit A.

17. Columbia alleges that "[t]his is an action alleging fraud, civil conspiracy to commit fraud, abuse of process, and racketeering, all arising from a scheme between Defendants that was designed and implemented to defraud the United States Patent and Trademark Office (the 'Patent Office') and Columbia." (*Columbia* FAC, ¶ 1.)

18. The *Columbia* FAC alleges that Michael Carey is the CEO, President, and a Director of Seirus; that Wendy Carey is the CFO and a Director of Seirus; and that Robert (Bob) Murphy is the Vice President of Seirus. (*Columbia* FAC, ¶¶ 15-17.)

19. The *Columbia* FAC contends that the case "revolves around a procedure established by Congress as part of the Leahy-Smith America Invents Act ("AIA")" known as *inter partes* reviews ("IPR") which is "a trial procedure conducted before the PTAB [the Patent Trial and Appeal Board], which allows the opportunity for third parties to seek to invalidate issued United States patents." (*Columbia* FAC, ¶ 49.) The *Columbia* FAC asserts that the AIA provides that any "person who is not the owner of a patent may file with the Office a petition to institute an inter partes review of the patent" but that, pursuant to 35 U.S.C. § 315(b), "an IPR 'may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, *real party in interest, or privity* of the petitioner is served with complaint alleging infringement of the patent.'" (*Columbia* FAC, ¶¶ 50, 51 (emphasis in original).) The *Columbia*

FAC alleges that "[t]he IPR process has been very beneficial to many parties accused of patent infringement." (*Columbia* FAC, ¶ 56.)

20. The *Columbia* FAC claims that Columbia, an outdoor apparel company, obtained patents protecting its Omni-Heat® Reflective technology, including U.S. Patent Nos 8,424,119 ("the '119 patent") and 8,453,270 ("the '270 patent) (collectively, "the Omni-Heat® Reflective Patents"). (*Columbia* FAC, ¶¶ 65, 66.)

21. The *Columbia* FAC asserts that, on December 4, 2013, Columbia filed a lawsuit against Seirus in the United States District Court for the Western District of Washington ("the Washington Action") alleging that Seirus's HeatWave products infringed one of Columbia's design patents, that on April 2, 2014, Columbia filed an amended complaint against Seirus in the Washington Action alleging infringement of the Omni-Heat® Reflective Patents, and that, in January 2015, Columbia voluntarily dismissed the Washington Action and filed an action in the United States District Court for the District of Oregon ("the Seirus Oregon Action") alleging infringement of the Omni-Heat® Reflective Patents. (*Columbia* FAC, ¶¶ 73-75.)

22. The *Columbia* FAC further asserts that, by January 2017, the court in the Seirus Oregon Action had already found Seirus liable for infringement of one of Columbia's design patents and Seirus had stipulated that the patent was not valid, and the trial on the remaining issues, including Seirus's financial liability, was set to begin on April 11, 2017. (*Columbia* FAC, ¶¶ 81-82.)

23. The *Columbia* FAC alleges that, as trial approached in the Seirus Oregon Actin, Seirus and its officers and directors, including Michael Carey, Wendy Carey, and Robert (Bob) Murphy "knew that Seirus, and any person in privity with it, was time-barred from filing IPR petitions pursuant to 35 U.S.C. § 315(b)." (*Columbia* FAC, ¶¶ 83-84.) The *Columbia* FAC then claims in paragraphs 86 through 88 inclusive as follows:

///

///

///

86. To avoid these clear statutory bars to filing an IPR petition, in October 2016, Seirus, at the direction of M. Carey, W. Carey and Murphy, and Ventex, by means of Go and Park, agreed that *Ventex* would file IPR petitions against the '119 and '270 patents on Seirus's behalf. But Seirus, Ventex, and all other Defendants knew that this was unlawful under 35 U.S.C. § 315(b), because Seirus and Ventex were in privity with respect to any IPRs, and Seirus would also be a real party-in-interest with respect to such IPRs.

87. To disguise these facts, Seirus and Ventex entered into a written agreement – the IPR Funding Contract – by which Seirus would pay for the Ventex IPRs through a complicated financial scheme. But the IPR Funding Contract was a sham, meant to disguise the fact that Seirus induced and would be paying for the Ventex IPRs. Ventex would then fraudulently assert that it was the only real party-in-interest with respect to the Ventex IPRs, and by operation of law, representing to the PTAB that it was not acting as a proxy for Seirus.

88. Seirus and Ventex, and all other Defendants, fraudulently called the IPR Funding Contract the "Exclusive Manufacturing Agreement." [ ]

(*Columbia* FAC, ¶¶ 86-88 (emphasis in original).)

24. The *Columbia* FAC alleges that, in January 2017, Ventex filed two petitions for IPR of the '119 and '270 patents; the PTAB assigned IPR NO. 2017-00651 to Ventex's petition for IPR of the '119 patent and IPR No. 2017-00789 to Ventex's petition for IPR of the '270 patent. (*Columbia* FAC, ¶¶ 103-107.)

25. The *Columbia* FAC avers that, in each of the IPR petitions, Ventex alleged that it was the only real party-in-interest even though "Ventex filed the Ventex IPRs only at the behest of Seirus and with funding from Seirus, who desired review of the Omni-Heat® Reflective Patents for the purpose, *inter alia*, of staying and disrupting the Seirus Oregon Action." (*Columbia* FAC, ¶¶ 111-112.)

26. The *Columbia* FAC then sets out a series of allegations that state in part as follows:

114. Ventex's failure to identify a real party-in-interest, Seirus, was fraudulent and was done with the purpose and intent to avoid or evade the time limitations imposed by 35 U.S.C. § 315(b).

* * *

116. At all times relevant hereto, Ventex and all other Defendants knew that Seirus was a real party-in-interest to the Ventex IPRs.

117. At all times relevant hereto, Ventex and all other Defendants knew that Ventex was under a statutory obligation to identify Seirus as a real party-in-

interest to the Ventex IPRs when it filed its petitions.

118. The PTAB's Trial Practice and Procedure Guide requires that documents filed with the PTAB be signed in accordance with 37 CFR § 11.18(a). 37 CFR § 42.6(a)(4). 37 CFR § 11.18(a) states that all documents must be signed in compliance with 37 CFR § 1.4(d). 37 CFR § 1.4(d)(4) states that "presentation to the Office (whether by signing, filing, submitting, or later advocating) of any paper by a party constitutes certification under section 11.18(b)"; and that "violations of 11.18(b)(2) may result in sanctions under 11.18(c)."

\* \* \*

120. ... [A] violation of the certification required by 37 CFR § 11.18(b)(1) for an act such as willfully making false or fraudulent statements could subject the violator to, e.g., criminal perjury or criminal fraud charges.

121. Further, 37 CFR § 11.18(c) states that "[v]iolations of any of paragraphs (b)(2)(i) through (iv) of this section are ... subject to such sanctions or actions as deemed appropriate by the USPTO Director . . . ."

122. At all times relevant hereto, Ventex and all other Defendants knew that Ventex, by filing its petitions for the Ventex IPRs and all subsequent papers in the Ventex IPRs, was under an obligation pursuant to 37 CFR § 11.18(b)(2) to certify that "[a]ll statements made therein" were "true," and "with the knowledge that whoever, in any matter within the jurisdiction of the Office, knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact, or knowingly and willfully makes any false, fictitious, or fraudulent statements or representations, or knowingly and willfully makes or uses any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry, shall be subject to the penalties set forth under 18 U.S.C. § 1001 and any other applicable criminal statute, and violations of the provisions of this section may jeopardize the probative value of the paper"; and to certify that, e.g., the papers were "not being presented for any improper purpose."

123. At all times relevant hereto, Ventex and all other Defendants knew that Ventex, in filing its petitions for the Ventex IPRs, was defrauding both Plaintiff and the PTAB by intentionally omitting Seirus as a real party-in-interest to the Ventex IPRs.

124. Had Ventex identified Seirus as a real party-in-interest, the PTAB would have been statutorily required to deny institution based on the complaint served upon Seirus in the underlying Seirus Litigation in April 2014.

125. Ventex thus violated the certification requirements of 37 CFR §§ 11.18(b)(1) and (b)(2) by filing its petitions, and subsequently with each filing it made for the Ventex IPRs at the PTAB.

\* \* \*

129. Ventex had an obligation to produce documents inconsistent with its position that there is no privity between it and Seirus and that Ventex was the sole real party-in-interest as "routine discovery" under 37 CFR §

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

42.51(b)(1)(iii). Ventex knowingly and intentionally failed to do so, with the intent to defraud.

130. Ventex was also obligated to notify the PTAB and Columbia within 21 days upon learning of any change of information relating to real parties-in-interest by filing an updated "mandatory notice." 77 Fed. Reg. at 48759.

131. Ventex never filed an updated mandatory notice in the Ventex IPRs revising its identification of real parties-in-interest to the Ventex IPRs.

132. On July 26, 2017, the PTAB instituted trial on the Ventex IPRs.

133. The PTAB initiated trial in the Ventex IPRs in part based on Ventex's false representations that it was the only real party-in-interest.

(*Columbia* FAC, ¶¶ 114, 116-118, 120-125, 129-133.)

27. The *Columbia* FAC further claims that Seirus, at the direction of Michael Carey, Wendy Carey, and Robert (Bob) Murphy, used the filings of the Ventex IPRs and the PTAB's decision to institute the Ventex IPRs as a basis to move to stay the trial that had been scheduled to begin on April 11, 2017 in the Seirus Oregon Action. (*Columbia* FAC, ¶¶ 5, 146-157.)

28. The *Columbia* FAC also alleges that Ventex and defendant Park gave perjured testimony in the proceedings before the Patent Office and engaged in spoliation of documents "for purposes of concealing the conspiracy and its wrongful acts." (*Columbia* FAC, ¶ 7.)

29. The *Columbia* FAC asserts that, in January 2019, after Columbia made the PTAB aware of Seirus's and Ventex's wrongful and unlawful acts regarding the institution of the Ventex IPRs, the PTAB vacated the intuition and terminated the fraudulently-filed Ventex IPRs, but not before Columbia spent two years and more than $700,000 defending the fraudulently-filed IPRs. (*Columbia* FAC, ¶¶ 8-9.)

30. The *Columbia* FAC contains eight claims for relief: First Claim – violation of the federal Racketeering Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1964(c)) (*Columbia* FAC, ¶¶ 220-272); Second Claim – violation of the Oregon RICO statute (ORS 166.725(7)(a)(B) (*Columbia* FAC, ¶¶ 273-328); Third Claim – Fraud under Oregon law (*Columbia* FAC, ¶¶ 329-353); Fourth Claim – Actual Fraud under Virginia Law (*Columbia* FAC, ¶¶ 354-370); Fifth Claim – Civil Conspiracy to Commit Fraud under Virginia law (VA Code § 18.2-499) (*Columbia* FAC, ¶¶ 371-378); Sixth Claim – Civil Conspiracy to Commit Fraud under

Virginia law (common law) (*Columbia* FAC, ¶¶ 379-385); Seventh Claim – Abuse of Process under Virginia law (*Columbia* FAC, ¶¶ 386-394); and Eighth Claim – Exemplary Punitive Damages in an amount not less than $20,000,000. (*Columbia* FAC, ¶¶ 395-401.)

31. The Columbia FAC seeks a "[f]inding that all defendants are jointly and severally liable for all damages caused to [Columbia];" "monetary damages in an amount not less than $700,000; enhanced (treble) monetary damages pursuant to 18 U.S.C. § 1964(c) and ORS 166.725(7)(a);" litigation expenses, including reasonable attorneys' fees, costs, and disbursements; an "[a]ward[] … [of] punitive damages in the sum of not less than $20,000,000 or an amount otherwise to be decided by a jury;" and "such other relief as the case may require or as may be deemed proper and equitable." (*Columbia* FAC, Prayer for Relief.)

C. The Tender of Defense

32. On or about February 19, 2019, Seirus, through its insurance broker Cavignac & Associates, notified Travelers of the complaint in the 2019 *Columbia* Action and requested that Travelers defend and indemnify Seirus. After investigating the matter, Travelers notified Seirus on March 12, 2019, that Travelers, although not obligated to do so, will defend Seirus, Michael Carey, Wendy Carey, and Robert (Bob) Murphy subject to a reservation of rights, including but not limited to the rights to decline indemnity, to withdraw from the defense at any time, to seek full or partial reimbursement of defense costs from Seirus if it should be determined that Travelers had no obligation to defend or indemnify against the 2019 *Columbia* Action or had no obligation to defend or indemnify against certain claims, and to pursue a declaratory judgment action.

**FIRST CLAIM FOR RELIEF – DECLARATORY JUDGMENT**

(No Duty to Defend)

33. Travelers incorporates herein by reference, as if fully restated, paragraphs 1 through 32 above.

34. An actual controversy has arisen and now exists between Travelers, on the one hand, and Seirus, Michael Carey, Wendy Carey, and Robert (Bob) Murphy, and each of them, on the other hand, concerning their respective rights and duties under the Travelers Policies as respects the defense of Seirus, Michael Carey, Wendy Carey, and Robert (Bob) Murphy in the

2019 *Columbia* Action.

35. Travelers contends it has no duty to defend Seirus, Michael Carey, Wendy Carey, and Robert (Bob) Murphy in the 2019 *Columbia* Action under the Travelers Policies because the allegations in the *Columbia* FAC, if proven, do not establish coverage or a potential for coverage for "bodily injury," "property damage," "personal injury," or "advertising injury." In addition, the exclusions in the Travelers Policies for "Knowing Violation Of Rights Of Another," "Criminal Acts," "Material Published With Knowledge Of Falsity," "Material Published Or Used Prior To Policy Period," and/or "Intellectual Property" apply to preclude coverage.

36. Travelers is informed and believes that Seirus, Michael Carey, Wendy Carey, and Robert (Bob) Murphy, and each of them, contend that Travelers is obligated to provide them a defense to the claims made against them in the 2019 *Columbia* Action.

37. Travelers desires a judicial determination of its rights and duties under the Travelers Policies, if any, with respect to the claims made against Seirus, Michael Carey, Wendy Carey, and Robert (Bob) Murphy, and each of them, in the 2019 *Columbia* Action.

38. A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties as aforementioned. Said controversy is incapable of resolution without judicial adjudication. Accordingly, Travelers has no plain, speedy and adequate remedy at law, and requests a declaratory judgment, adjudging that Travelers has no duty to defend Seirus, Michael Carey, Wendy Carey, and Robert (Bob) Murphy, or any of them, in the 2019 *Columbia* Action under the Travelers Policies.

**SECOND CLAIM FOR RELIEF – DECLARATORY JUDGMENT**

(No Duty to Indemnify)

39. Travelers incorporates herein by reference, as if fully restated, paragraphs 1 through 38 above.

40. An actual controversy has arisen and now exists between Travelers, on the one hand, and Seirus, M. Carey, W. Carey, and Murphy, and each of them, on the other hand, concerning their respective rights and duties under the Travelers Policies as respects potential indemnity.

41. Travelers contends it has no duty to indemnify or to satisfy a judgment for damages against Seirus, Michael Carey, Wendy Carey, and Robert (Bob) Murphy, or any of them, in the 2019 *Columbia* Action under the Travelers Policies for same reasons Travelers has no duty to defend the 2019 *Columbia* Action.

42. Travelers is informed and believes Seirus, Michael Carey, Wendy Carey, and Robert (Bob) Murphy, and each of them, contend that Travelers is obligated to indemnify them for any damages up to the policy limits that may be awarded against them in the 2019 *Columbia* Action.

43. Travelers desires a judicial determination of its rights and duties under the Travelers Policies, if any, with respect to the claims made against Seirus, Michael Carey, Wendy Carey, and Robert (Bob) Murphy, and each of them, in the 2019 *Columbia* Action.

44. A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties as aforementioned. Said controversy is incapable of resolution without judicial adjudication. Accordingly, Travelers has no plain, speedy and adequate remedy at law, and requests a declaratory judgment, adjudging that Travelers has no duty to indemnify or to satisfy a judgment for damages against Seirus, Michael Carey, Wendy Carey, and Robert (Bob) Murphy, or any of them, under the Travelers Policies, or to bear the cost of other relief sought by Columbia against Seirus, Michael Carey, Wendy Carey, and Robert (Bob) Murphy, and each of them, in the 2019 *Columbia* Action under the Travelers Policies.

### THIRD CLAIM FOR RELIEF – REIMBURSEMENT

45. Travelers incorporates herein by reference, as if fully restated, paragraphs 1 through 44 above.

46. Travelers will incur attorneys' fees and other expenses in connection with its defense of Seirus, Michael Carey, Wendy Carey, and Robert (Bob) Murphy in the 2019 *Columbia* Action, and may incur indemnity which may be paid in connection with a resolution of the 2019 *Columbia* Action.

47. Travelers had no duty under the Travelers Policies to afford a defense or to pay

indemnity to some or all of the claims within the 2019 *Columbia* Action, and therefore has an equitable and quasi-contractual right to be reimbursed by Seirus, Michael Carey, Wendy Carey, and Robert (Bob) Murphy for some or all attorneys' fees, costs, and other expenses including any indemnity which may be paid or incurred by Travelers in the defense and/or settlement of the 2019 *Columbia* Action, pursuant to *Buss v. Superior Court*, 16 Cal. 4th 35, 65 (1997), and related cases.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Travelers Property Casualty Company of America prays for relief as follows:

1. For a judgment that, by reason of the terms, conditions, limitations, exclusions, and endorsements of the Travelers Policies, Travelers has no duty to defend by Seirus Innovative Accessories, Inc., Michael Carey, Wendy Carey, or Robert (Bob) Murphy with respect to the 2019 *Columbia* Action;

2. For a judgment that, by reason of the terms, conditions, limitations, exclusions, and endorsements of the Travelers Policies, Travelers has no duty to indemnify and/or to satisfy any judgment that may be rendered against Seirus Innovative Accessories, Inc., Michael Carey, Wendy Carey, or Robert (Bob) Murphy in the 2019 *Columbia* Action;

3. For a judgment that, by reason of the terms, conditions, limitations, exclusions, and endorsements of the Travelers Policies, Travelers is entitled to restitution and reimbursement from Seirus Innovative Accessories, Inc., Michael Carey, Wendy Carey, and Robert (Bob) Murphy, and each of them, for some or all sums expended in defense or settlement or satisfaction of a judgment in the 2019 *Columbia* Action;

4. On all causes of action, for interest, including prejudgment interest;

5. On all causes of action, for costs incurred herein; and

6. For such other and further relief as the Court deems just and proper.

///
///
///

1  DATED: May 3, 2019                    CLYDE & CO US LLP

                                         By: _____
                                              Bruce D. Celebrezze
                                              Dean J. McElroy
                                              Attorneys for Plaintiff TRAVELERS PROPERTY
                                              CASUALTY COMPANY OF AMERICA

## DEMAND FOR JURY TRIAL

Pursuant to Rules 38 and 39 of the Federal Rules of Civil Procedure, plaintiff Travelers Property Casualty Company of America demands a jury trial on all issues triable of right by a jury.

DATED: May 3, 2019      CLYDE & CO US LLP

By: _____
Bruce D. Celebrezze
Dean J. McElroy
Attorneys for Plaintiff TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA